Good morning. May it please the court. Michael Tanaka appearing on behalf of Petitioner Von Villas. In this case, Mr. Von Villas has been trying pretty much since the moment he was convicted to have his conviction reviewed eventually on federal habeas. He's serving a sentence of life without possibility of parole. He has two life sentences. And to date, he's been totally unsuccessful in having his federal petition reviewed through no fault of his own. There are at least, there were three reasons raised in the brief why it was there to dismiss the petition. I'm going to focus on the equitable tolling issue and the denial by the magistrate or the district court of his motion for stay. Equitable tolling is particularly apt in this case because it's a doctrine that's been developed to allow petitioners who filed late through no fault of their own and exercised diligence to obtain, to have the petition be deemed timely. Here, Mr. Von Villas filed his petition, he filed the first one within a couple of weeks of finding out about the EDPUS statutory deadline, which was brand new at the time, and then given a series of confusing advisements allowed that one to be dismissed, exhausted his state court remedies with unexhausted claims, and then refiled one very expeditiously within a week of having exhausted his state court remedies. So why was the petition late? Well, it was late because he was facing very extraordinary circumstances in that this record was huge. There were two cases. There were over 750 volumes of transcripts. He was in prison. He had trouble getting the record, and when he had the record, he was only allowed to use one box at a time and four hours in the law library. Now, most really experienced lawyers would have a huge amount of difficulty preparing habeas petitions, both state and federal, under those circumstances. Add to that that he didn't even know that he had a deadline on the petition until, at most, three weeks before the deadline, because he was in state prison, obviously, and his only access to law and legal material is through the prison law library or the information the prison gave him. And as he alleged, and it's not been contradicted, the prison law library, there was no information in prison about the new EDPOD deadline until about three weeks before it was set to expire. Excuse me. Excuse me, counsel. You just said it has not been contradicted, and there is a conflicting affidavit. Isn't there about whether the law library was correctly updated? There's a couple of very specific declarations from the people in the prison that said it wasn't. There's one general one from someone higher up that said that, well, of course, we updated our things. That's ambiguous. But in any case. The lower court, I should never refer to the district court as the lower court. Forgive me. I hope they will forgive me. As a former trial court judge, I'm particularly unfond of that expression. But the district court assumed that he didn't know until the few weeks before the EDPOD deadline. And so if we assume that going forward for today, how can your client show causation? I mean, he did file within that period of time. He filed a federal petition, not a state petition. Can you talk about that? He filed a federal petition that didn't contain his unexhausted claims. So it's clear that had he had time and known about it the year in advance, he well could have exhausted his state claims. Well, maybe not. Maybe not. As you said, a lawyer would have been challenged to do it. It's 750, a huge, huge record. At the very least, he could have filed maybe a state exhaustion petition within the statutory deadline. Well, that's really my question. What prevented him from doing that, sir? He filed a federal petition once he learned about the deadline. An incomplete one. Right. The same impediments that prevented him from filing a complete federal petition, that is that he didn't have his legal materials until just before that. I believe the evidence in the record is that he didn't have a complete set of his transcripts until September 1996, which was well after that. So those same impediments prevented him from filing both an exhausted federal petition and exhausting his state court remedies in advance of that. I'm curious as to why in your oral argument here you're emphasizing the equitable tolling, where part of that argument depends upon this impediment. And if there is indeed a state-created impediment, then the statutory tolling, it seems to me, would also apply. I mean, if you accept that, if you accept that there was an impediment. I completely agree, Your Honor. And perhaps the reason is just the law is more developed on the equitable tolling side. But I think under the facts of this case, the same facts support statutory tolling as an impediment, state-created impediment, as would support equitable tolling. Often that's not the case. But here, under these facts, that is the case. And because of the impediment, both the lack of notes in the law library and the restriction of access to his legal materials, he was unable to file in time. And that should have created a statutory tolling which would advance the date or toll the date. If we were to accept this argument, wouldn't we be expanding the law about what does and does not satisfy the equitable tolling requirement? Respectfully, I don't agree, Your Honor. I think it's right in the heartland of the law, equitable tolling, that is an extraordinary circumstance outside the petitioner's control that made it. That prevents him from filing. And that's what gets to causation. It's the causation issue that strikes me as really problematic in this case, because he was able to file something. Something, but then you're penalizing him for doing what he thought he had to do, being too diligent in fact. So if we accept that argument, then what he should have done is not filed anything, because he didn't have anything done that was acceptable for filing, and just proceeded at a pace. And then once he did that, come back and file, that would have been late, and we would have said, oh, you know, it's late, but we're excusing it, because there's nothing. I mean, he did the best he could under the circumstances. That he made a decision, a lay decision, and remember this was right at the very inception of AEDPA, so lawyers didn't know how to proceed, much less prisoners who are reading this for the first time. He thinks the best thing he can do is throw a bare-bones petition together and put it before the court, even though it was incomplete. That he should not be penalized for his diligence. In fact, in the one case that the state cites in Waldron Ramsey, this court suggests that that's exactly what the petitioner should have done. They fault him for not putting together a form petition and filing this. Well, you know, he didn't have his material, but he didn't really need it all. He could have done this and then challenged the non-material. That's exactly what Mr. Von Dittel said. So, if I understand correctly, your client faced some pretty serious impediments, including a really unsettled area of the law, admittedly, at that point, and he had enough time to put together an incomplete, you'll call it bare-bones, petition and file it in federal court, but he didn't have time to do that in state court. No. If you look at a state court petition, one of the key claims in it is the ineffective assistance of counsel claim, and as he goes through that, he attaches many, many exhibits to the trial court record that weren't part of the appellate record and that he had to, there was no way, one box at a time, that he could have done that within the same period of time. Again, remember that back then, there were no deadlines, so all he had to do was show, for federal court, show avoid a latches problem and show that he was proceeding diligently, and in state court, those same reasons would explain a late filing. So all he had to do was proceed as quickly as he could, and he was doing that because it was certainly in his interest to challenge this conviction. So the reason he couldn't file that state court petition in that same time period is because he just didn't have the material, and he needed to attach all of those as exhibits. For the IAC. For the IAC. Thank you, counsel. We'll give you a little time to rebuttal. Thank you. Good morning, Your Honors. Bob Snyder, Deputy California Attorney General, appearing for Respondent Warden Allison. May it please the Court, the single two most important facts about this case are, number one, petitioner filed his petitions timely in 1997, and he raised 13 claims. It wasn't really a patchwork job. If you look at the 1997 petition, he was pretty thorough, and of the 13 claims he raised, only three were unexhausted. He raised 10 exhausted claims timely. The second important fact is this. Rather than proceed with his 10 exhausted claims, which is the choice he was offered, he chose to return to state court, even against correct advice that the petitions would be dismissed. Do you have, when you're doing a numerical assessment, do you have any reason to suggest that the three were not the most important or at least as important as the other 10 or 7? I do, Your Honor, and that's this. Interestingly, of the three newly exhausted claims, the ones that he had exhausted by 1998, only one of those turns up in the 1998 petitions. The other two were dropped, even though they were exhausted. How many are there now? I beg your pardon? How many claims are there now? There are 13 now. I think 8 in the Weed Petition and 5 in the Logarcio Petition. But that's giving him credit or tagging him with knowledge he didn't have at the time. In 1997, his contemporaneously filed declaration said, I really don't want to give up these unexhausted. I thought there were four, but three or four unexhausted claims, I think they're really important. So if he decided later they weren't, he decided later they weren't. But in 1997, he felt that he had this mixed petition. The court told him it was a mixed petition, and he didn't want to give up those claims. He was clearly trying to preserve them, clearly trying to exhaust them, and didn't know how to do it. Right? I think that's a fair characterization, Honor. But you know what's interesting in this response to the court's earlier question? The problem isn't just timeliness with respect to the federal petitions. You know we can debate the declarations between the librarians. The man in charge says the AEDPA material was there. The underlings say, no, it wasn't there. The district court didn't resolve that factual discrepancy. It said, either way, I find no equitable tolling. But the problem for Petitioner is that during the two years he had the Weed petition and the two years he had the Lugersio petition, I'm referring to the beginning of the state appeals ending until the time the federal petitions were filed, Petitioner does nothing to pursue the state petitions. And, you know, the proof of that pudding is this. When he did go ahead and try to exhaust the state petitions, it took him less than one month in the Weed case and less than three months in the Lugersio case. So it really wouldn't have taken that long to exhaust, and we wouldn't have this problem today. He could have presented a fully exhausted petition. We wouldn't have had it if he'd been given a stay either, which would have been the proper course. That's fair, Your Honor. There are some issues with respect to the stay. But, I mean, the district judge was also wrong in denying the stay because nobody knew what to do as soon as it passed. Judges didn't know. Lawyers didn't know. And this prisoner seems to have known pretty much as much as anybody would have known. Right. And the court's exactly right. You know, it was one year into AEDPA. But what the court did get right, was true in 97 and is true in 2014, is that it is a matter of the district court's discretion. And the way the district court decides whether or not to grant a stay. But where was the prejudice to the government? He was in jail. Yes. He was in prison. He was going to remain there if a stay was granted. I don't understand where the court, even though it didn't have case law to direct it, in exercising that discretion, one would think, one would look at, well, here's the problem. You're prejudicing the government. But I don't see that prejudice. I wouldn't argue it, Your Honor. I think, though, the problem is that that's not one of the tests we apply in determining whether equitable tolling is warranted. Rather, the test underrides what we've done. We're talking about the motion to stay, though. Yes. We're talking about the abuse of discretion. What is there to weigh on the other side of the scale? Well, what the court weighed was the fact that there were no extraordinary circumstances that prevented a petitioner from exhausting in state court. Well, if that's the case, do we need to have a finding about what the circumstances were? It's pretty muddy. It's pretty fuzzy about the extent to which he had delays between having any boxes in his cell. It is a little fuzzy. Where there does seem to be common ground, though, is that by September of 1996, Petitioner had all but, I think the number was, 43 boxes. He had the difference between the 43 missing and the 720 that were the total. So he had the other problem is, if we want to talk about equity, is how Petitioner used the time he did have with the boxes. Well, that's a really good point, because I keep being distracted by the record telling me that he was getting one box at a time and had a pile of boxes to go through, and that he was inventorying the contents of the boxes. That doesn't, I mean, anybody who's worked a large record as you have and as I have knows you have to, you can't do it one box at a time. Sure. And the difference, I think, for Petitioner from you and me, is that Petitioner attended the trial and all the evidence. But it had been years. How many years had passed between these trials? Well, it had been a lot of years. Another difference between you and the Petitioner is you went to law school, I assume. I did. Well, so is that an extraordinary circumstance? Some combination of the, I mean, this is truly a question. What's the state's response to the volume of record, the fact that he got one box at a time? He was at best inventorying them, and we know he had not completed the inventory. What do we do with that? I think I would have two responses, Your Honor, and I don't mean to be callous here, but it's not the state's responsibility for how Petitioner uses the time he has. If he chooses to inventory rather than actually write issues, that's not a state-created impediment. The bigger problem is that – Except before we leave that point, forgive my interruption, but while he was inventorying until the last few weeks, he didn't know he had a time pressure. So inventory, schminventory, what's he care? He's not going anywhere. And I don't mean to be callous, but at that point there really was no time pressure for him. So it doesn't seem to be unreasonable at that point. And then the game changed when he got notice of AEDPA, right? It did. And, you know, if the senior librarian is correct, it was in the library. But the bigger problem is what Judge Christin alluded to, which is that Petitioner has never established that the absence of his transcripts or the slow way they leak out was the cause of the delay. And you have to have causation. It's more than problematical. This Court said in Waldron-Ramsey v. Petrolke that if you don't point, and this is the case's language, if you don't point to specific instances where the Petitioner needed a particular document and couldn't procure it, you don't get equitable tolling, even if you're only getting three boxes at a time in a 15,000-page record. What's your response to opposing counsel's comment that the reason that he couldn't exhaust the state claim is that he had an IAC claim and he needed to attach specific documents? Well, as near as I can tell, the unexhausted claims are evidence of propensity, which was not subsequent to the trial, an improper preemptory challenge, which was not subsequent to the trial, and a refusal to instruct the jury regarding unanimity. Is that an IAC claim, the last one you mentioned? No. The IAC claims, if I may, suffer from a different problem, which is this. They're new, but to the extent they're Fourth Amendment claims, they're not going to get very far on habeas under Stone v. Powell, and to that extent under Rines, I would submit they're not potentially meritorious. The search warrant claims are simply not cognizable. Okay, so that seems to be getting the cart a bit ahead of the horse. All we're trying to figure out is whether there's an equitable tolling claim here. Yes, and I think the reason there's not, Your Honor, is because while the circumstances were difficult for Petitioner, the district court characterized it as a predicament, and I think that's accurate, that's a different situation from equitable tolling caused by the state or created with extraordinary circumstances. The bottom line, if I may, is that there's nothing extraordinary about what Petitioner went through. The proof is that he managed to file a pretty good 1997 petition or a pair with two claims, and, you know, the district court said it's not a circumstance beyond his control. I think that's correct. Counsel, your time's up if you want to wind up with a sentence or two. Thank you, Your Honor. The district court said that Petitioner's predicament was unfortunate but not beyond his control, and for that reason we would ask that the district court's judgment be affirmed and that the petition be dismissed with prejudice. Thank you very much, Your Honor. Thank you, counsel. All right, we'll give you two minutes to rebuttal. Just a couple quick responses. It wasn't beyond his control if he had 20-20 hindsight and should have stayed the law. Then, obviously, what he would have done is filed a mixed petition. He would have moved for a rind stay, and it would have been granted, and we'd all been good. But that didn't happen. He did everything, the issues, whether his actions were reasonable in light of his particular circumstances, and they obviously were. The last point I want to address is opposing counsel made reference to Mr. Von Willis sitting around for years before he got around to filing a state court habeas petition, and that is absolutely not true. He talked first about the first conviction that was affirmed, which was the LaGurcia one, and that was denied in that case in June of 1993. From that moment on, what Mr. Von Willis did was wrote his trial counsel and tried to get the material from that case so he could begin preparing state and federal writs. If you look at ER 28, it's a letter dated April 17, 1994, which is about 10 months after that conviction becomes final, where he says, this is my fourth written request. You've ignored all my phone calls, and now I've had someone else call you, and you've ignored that as well. So the record absolutely shows extreme diligence on the part of Mr. Von Willis. He wasn't sitting around just sitting in his prison cell waiting for something to happen. He was actively pursuing this throughout the entirety of that situation. Given that that's all he needs to do, I submit that the petition was erroneously dismissed. Thank you, counsel. Case just argued will be submitted.
judges: Settle, REINHARDT, CHRISTEN